"COAUTES, Judge.
On the 13th October 1807, Baker, executor of Gordon, by virtue of a power to that effect in the will of his testator, sold the lot in controversy to M’Tyre, it being agreed, that for the balance of the purchase money not then paid, the purchaser, who was to receive a conveyance, was, as a colemporaneous act, to give his bonds, as also a, deed of trust on the lot, to secure the payment. The deed from Baker to him was accordingly executed, and on the same day two bonds were given by M’Tyre, without surety, for the residue of the purchase money, specifying that they were for the purchase money of the lot aforesaid; and he also, at the same time, executed a deed of trust to secure the payment of the debts due by those bonds. At this time, it is said, M’Tyre was indebted to the intestate of the appellees, who afterwards, namely, on the 9th July 1810, obtained a decree in Chesterfield county court, against him for 1911. 8s. with interest from the first of January 1804, on which decree they sued out an elegit on the 7th day of May 1816.
The deed from Baker to M’Tyre, was acknowledged and ordered to be recorded, on the 12th Sept. 1808. The deed of trust was never recorded; Baker not being able to procure the attendance of the witnesses, or the acknowledgment of M’Tyre, who had removed out of the state. On the 13th of June 1808, however, it was taken into court and proved by one witness.
When the purchase money became due, Baker, instead of going into a court of Chancery, to have his original equitable lien on the land for the purchase money in forced; and the trust executed in the same manner as it might have been, had he not by accident been deprived of the benefit of having the deed recorded, applied to the trustees to sell the property, who accordingly did so; and he, as the highest bidder became the purchaser; and the trustees by their deed dated the loth July 1809, reciting'x'the deed of trust to them, as remaining in the county office, conveyed the lot to him. This deed was fulljr proved on the 12th Feb. 1810, and is recorded.
At this time M’Tyre, could have resold and conveyed to Baker for the payment of this debt, or in any other bona fide way, notwithstanding the suit then depending against him by the appellee; and if he had done so, and joined with the trustees in a deed, as well the legal title in them, as the equity of redemption in him, would have passed to Baker. But if the sale by the trustees was such, as to bar his equity, and if nothing was done in this case, except what in equity ought to have been done, and what a court of equity would have decreed and confirmed, it might be a question, whether the title being thus passed by his agents, shall not avail as much, as if made by himself together with them.
But waiving this for the present, and supposing no such sale and conveyance to have been made, M’Tyre,. after the lapse of twelve months from the date of the decree aforesaid, supposing it to affect the land in the same manner as a judgment at law, but concerning which, perhaps, there may be some doubt, could have sold and conveyed, bona fide, as aforesaid, and a subsequent elegit could not have overreached this mesne act. Baker then, might have procured him and the trustees to make a fair sale and conveyance for this purpose; and situated as he was, he had a right, in equity, to demand it; and a court of equity *890 would have decreed it; and he was not bound to call on any or all of M’Tyre’s other creditors to intercept him, by inforc-ing any legal liens they may have acquired; they were to look to their own legal remedies, if they had any. He does in effect bring such suit. He asserts in his bill, his original lien and contract, to have the purchase money secured on the land; his failure by fraud, or accident, to have the deed recorded ; the sale by the trustees, &c. And on the 29th June 1812, the Chancellor by his decree confirms the sale made by the ^trustees, and directs M’Tyre also to convey. This decree only differs from the one which would have been made in the case supposed, by confirming the acts of the trustees as theretofore rightly done, instead of decreeing, that they should then make a sale. Take it though, that the decree had been su’ch as in the case supposed, and that the trustees had, in pursuance thereof, sold and conveyed to Baker before an elegit issued: could the creditor have taken this lot by his elegit, because M’Tyre had not joined in the deed? It is believed he could not. Nay, it is believed, that considering the original lien in this case, and that the title, by the original contract, was to be in M’Tyre but for a moment, and that for the purpose of more effectually securing the purchase money, it should be considered in equity, and taking all the papers as evidencing one transaction, as though the deed from Baker to M’Tyre had been defeasible, on the latter not paying up the purchase money. The hardship of a contrary construction would be extreme, as the deed from Baker, though not recorded within the eight .months, conveyed the title from him, and he would then, by fraud or accident, be deprived of that security on condition of which, he had made the deed. Under this view, a court of equity would have injoined the creditor, had he attempted to affect this land by his elegit, after such a decree as is above supposed, and before a sale and conveyance by the trustees. But the prior sale by the trustees is confirmed, and so it is, as to them, in the same plight, as if they had sold and conveyed under a decree. In that case, the other creditors could not, by subsequent elegits, as I apprehend, affect the land at law; they could only do so in equity, and there Baker is also a creditor, having a prior lien, and the legal title in him. But if Baker had also conveyed, whether by a bona fide agreement, or in obedience to a decree, a subsequent elegit surely would not affect the land as is . above observed; but *he also conveyed to Baker in obedience to that decree, by a deed made on 7th May 1816, the very day on which the elegit issued. Had this deed been executed the day before, no doubt could have existed: but both being executed on the same day, which shall be considered as prior? If neither, if in this respect they stand equal, and a resort must be had to a court of equity, then the doctrine laid down in 1 Eq. ca. abr. 320, would strongly apply, via. “that if a man mortgages by a defective conveyance, and there are subsequent creditors, whose debts did not originally affect the land, equity will supply such defective conveyance against such subsequent incumbrances whp acquire a legal title afterwards; for since the subsequent creditors did not originally take the land for their security, nor had in view an intention to affect them, when afterwards the lands are affected, and they come in under the very person who is obliged in conscience to make the defective security good, they stand in his place, and shall be postponed to such defective conveyance.” But what had M’Tyre to convey? Not even an equity of redemption. That was gone, if not at the moment the trustees sold and conveyed, at least as soon as that sale was confirmed by the decree above-mentioned.
Por these reasons I am of opinion, that the decree of the Chancery court is erroneous, and must be reversed with costs; and a decree entered that the injunction be made perpetual.
ROANE, Judge.
Admitting but not deciding, that the legal estate was vested in M’Tyre by means of the deed from Baker to him, the deed of trust made by him did not pass that title in prejudice of his (M’Tyre’s) creditors, for want of being recorded according to the provisions of the statute. Nevertheless (under the same admission,) however the case might be at law, in equity the elegit of the appellees ought not to be inforced. The *ground of this opinion is, that cotemporaneously with the receipt of the deed from Baker, he subjected the land to a lien, for the purchase money, by means of the deed of trust aforesaid. This is evinced as well by the special provisions in that deed, to that effect, as by .the omission to take sureties to the bonds for the payment of the purchase money: and the said land having been fairly sold, to satisfy the lien aforesaid and that sale ratified by a decree of the court of Chancery, in pursuance of which, a title has been regularly derived to the appellant, that title ought not to be disturbed. The decree dismissing the bill ought, therefore, to be reversed, and it is further decreed and ordered, that the injunction awarded in this .case be made perpetual.